**Ali Raef SALEH, Plaintiff(s)**

v.

**Tom RIDGE, Secretary of the Department of Homeland Security, et al., Defendant(s).**

**No. 04CIV1926(LTS)(HBP).**

United States District Court,
S.D. New York.

Feb. 24, 2005.

Alexandra V. Tseitlin, New York City, for Plaintiff.

James Loprest, U.S. Attorney's Office, S.D.N.Y., New York City, for Defendant.

### MEMORANDUM OPINION AND ORDER

SWAIN, District Judge.

Plaintiff Ali Raef Saleh ("Saleh"), brings this action seeking to compel Defendants Tom Ridge of the Department of Homeland Security ("DHS"), Eduardo Aguirre, Director of the United States Citizenship and Immigration Services ("CIS"), and Mary Ann Gantner, Director of the New York District Office of CIS (collectively, "Defendants") to act on his application for lawful permanent alien status. Defendants move to dismiss the Complaint for lack of subject matter jurisdiction, or in the alternative, for summary judgment, and Plaintiff cross-moves for summary judgment.

The Court has considered thoroughly the parties' submissions regarding the instant motions. For the reasons that fol-

low, Defendants' motion to dismiss is granted in part and denied in part, Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

## BACKGROUND

Plaintiff's principal material allegations, and the undisputed facts pertinent to the instant motion, can be summarized as follows. The Court takes as true the allegations in the Complaint and views the facts outside the Complaint in the light most favorable to the non-moving party. Plaintiff is a native and citizen of Lebanon. (Compl.¶ 2.) He entered the United States unlawfully in May 1985, evading immigration inspection. (Defendants' Rule 56.1 Statement ¶ 2 (citing Compl. Ex. A.).) In or about August 1995, Plaintiff and his wife filed Applications for Adjustment of Status with the New York District Office of the Immigration and Naturalization Service ("INS") to obtain discretionary adjustment of their immigration status to that of lawful permanent resident of the United States, pursuant to the Immigration and Nationality Act of 1952 ("INA") 8 U.S.C. §§ 1159(a), 1255(a). (Id. (citing Compl. ¶ 9 & Ex. A.)) Plaintiff asserted eligibility for adjustment based on the approval of a petition filed by his wife, Nadin Altamer, which reflected the fact that she had been granted asylum pursuant to 8 U.S.C. § 1158(b).[1] (Id. (citing Compl. ¶ 9 & Ex. A.).) Because Plaintiff's claim of eligibility for adjustment of status was based on his wife having been granted asylum, such an application was subject to the cap of 10,000 per year as established by Congress and as provided in 8 U.S.C. § 1159(b) for the number of aliens for whom the Attorney General may grant discretionary adjust-

ment based on the alien or an immediate relative having been admitted to the United States as a refugee pursuant to 8 U.S.C. § 1158(b)(1). (DR 56.1 ¶ 5 (citing 8 U.S.C. § 1101(a)(42)(A)).)

During the pendency of Plaintiff's application for adjustment of status, he was charged with, and pled guilty to Conspiracy to Traffic in Counterfeit Clothing in violation of 18 U.S.C. Sections 371 and 2320. (Id. ¶ 10.[2]) On July 15, 1999, Plaintiff was sentenced by Judge Miriam Goldman Cedarbaum of this Court to thirty-six months of probation. (Id.) During Plaintiff's March 1997 INS interview, the INS Officer had requested that Plaintiff provide, among other information, a certificate of disposition for his then pending criminal case. (Id.) Plaintiff provided the certificate of disposition to INS on or about September 22, 1999. (Id.)

On May 3, 2000, Plaintiff filed an Application by Refugee for Waiver of Inadmissibility, seeking a discretionary waiver of his inadmissibility to the United States (Plaintiff having entered the United States illegally in 1985) to ensure family unity and for humanitarian reasons. (DR 56.1 ¶ 10; Compl. ¶ 11 & Ex. C.) The District Director of the INS's New York District granted Plaintiff's waiver request on May 30, 2000. (Id.) Plaintiff's application for adjustment of status has not yet been adjudicated. Plaintiff asserts that he has made several attempts to inquire as to the status of his application and to seek assistance in expediting adjudication. (Compl.¶¶ 13–15.) Plaintiff further asserts that, although he is permitted to travel abroad for business and for family reasons, he has been damaged insofar as such trav-

---

1. Altamer's status was adjusted to lawful permanent resident on December 4, 1997, and she became a United States citizen on August 6, 2003. (Compl.¶ 9.)

2. The Complaint contains two paragraphs labeled as "10." The Court refers herein to both paragraphs as "10" rather than re-numbering the entire Complaint.

el is restricted based on his immigration status. (Id. ¶ 19.)

Plaintiff claims that the delay in adjudication of his application for adjustment of immigration status is unreasonable and requests that this Court compel Defendants to act on his application. Plaintiff asserts that the Court has jurisdiction of this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the judicial review provision of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, a jurisdictional provision of the INA, 8 U.S.C. § 1329, in the Court's capacity to issue a writ of mandamus to compel agency action pursuant to 28 U.S.C. § 1361, and pursuant to federal question jurisdiction as set forth in 28 U.S.C. § 1331. Defendants move to dismiss the Complaint in its entirety arguing that the Court lacks subject matter jurisdiction, or in the alternative, that Defendants are entitled to summary judgment because the delay in adjudicating Plaintiff's application for adjustment of status has not been unreasonable, and Plaintiff cross-moves on that basis.

## DISCUSSION

*Rule 12(b)(1)*

■ "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). The Court may look to evidence outside the pleadings in resolving a motion to dismiss for lack of subject matter jurisdiction, and the plaintiff has the burden of proving, by a preponderance of the evidence, that subject matter jurisdiction properly exists. *Id.; Kim v. Ashcroft*, 340 F.Supp.2d 384, 387 (S.D.N.Y.2004).

■ The INA provision invoked by Plaintiff, 8 U.S.C. § 1329, does not provide the Court with subject matter jurisdiction. That section provides, in relevant part,

that "[n]othing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers." 8 U.S.C.A. § 1329 (West 1999); *see also Batista v. United States Immigration and Naturalization Service, et al.*, No. 99 Civ. 2847(MBM), 2000 WL 204535, at *3 (S.D.N.Y. Feb.22, 2000). Likewise, the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent basis for subject matter jurisdiction in the district courts. *Checknan v. McElroy*, 313 F.Supp.2d 270, 274 (S.D.N.Y.2004) (citing *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)). In addition, the APA alone does not provide an independent basis for subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

■ In order to warrant relief under the mandamus statute, 28 U.S.C. § 1361, Plaintiff must establish that Defendants owe him a clear, non-discretionary duty. *Vladagina v. Ashcroft*, No. 00 Civ. 9456(DAB), 2002 WL 1162426, at *4 (S.D.N.Y. Apr.8, 2002). Adjustment of immigration status, however, is a discretionary act, and therefore, "[i]n keeping with the plain language [of 8 U.S.C. § 1255(a)], courts have consistently found mandamus inappropriate in actions based on the government's failure to adjust an applicant's status." *Id.* The Court therefore lacks subject matter jurisdiction to compel agency action by writ of mandamus in this case.

■ In order for the Court to have subject matter jurisdiction pursuant to 28 U.S.C. § 1331, (1) the claim must turn on an interpretation of the laws or Constitution of the United States, and (2) the claim must not be one that is "patently without merit." *Batista*, 2000 WL 204535, at *3 (citing *Bell v. Hood*, 327 U.S. 678, 682–84, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). To be

patently without merit, a claimed right must be so "insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Kim,* 340 F.Supp.2d at 391 (internal citations omitted). Plaintiff claims that Defendants' delay in adjudicating his application for adjustment of status is unreasonable and therefore violates the APA, which requires that an agency must conclude "within a reasonable time" matters presented to it. 5 U.S.C.A. § 555(b) (West 1996). Plaintiff's application has been pending since at least May 2000, and thus was pending for almost five years by the time the instant Complaint was filed. Under these circumstances, Plaintiff's APA section 555 claim is not patently without merit, and the Court has jurisdiction of Plaintiff's APA claim pursuant to 28 U.S.C. § 1331. The Court will therefore proceed to consider the parties' motions for summary judgment.

*Motions for Summary Judgment*

Summary judgment is to be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. The moving party bears the burden of establishing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is considered material to summary judgment "if it might affect the outcome of the suit under the governing law," and an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 69 (2d Cir.2001) (internal citation omitted). The Second Circuit has explained, however, that the

"party against whom summary judgment is sought ... 'must do more than simply show that there is some metaphysical doubt as to the material facts.... The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

▪In considering whether the delay in adjudicating Plaintiff's application for adjustment of status is unreasonable, the Court looks to "'the source of the delay—e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding.'" *Batista,* 2000 WL 204535, at *4 (quoting *Reddy v. Commodity Futures Trading Comm'n,* 191 F.3d 109, 120 (2d Cir.1999)). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Yu v. Brown,* 36 F.Supp.2d 922, 935; *see also Checknan,* 313 F.Supp.2d, at 275.

The INA provides that an alien will be eligible for adjustment in connection with an asylum petition where he (1) applies for adjustment; (2) has been physically present in the United States for at least one year after having been granted asylum; (3) continues to be a refugee within the meaning of 8 U.S.C. § 1101(a)(42), or is the spouse or child of a refugee; (4) has not been firmly resettled in any foreign country; (5) is admissible to the United States as an immigrant under the INA at the time of examination for adjustment; and (6) has a refugee number. 8 U.S.C.A. § 1159(b) (West 1999); 8 C.F.R. § 1209.2(a) (2004). Although Plaintiff filed his adjustment application in 1995, he was not eligible for adjustment until his waiver of inadmissibility was granted in May

2000. *See* 8 C.F.R. § 1209.2(b) (2004). It is therefore appropriate to focus on the time period from May 2000 to the present in considering whether the immigration agency's delay in adjudicating his application has been unreasonable. *See Zheng v. Reno,* 166 F.Supp.2d 875, 880 (S.D.N.Y. 2001) (computing delay of adjudication from date after plaintiff applied to have immigration judge's order of exclusion from United States lifted).

Congress has limited to 10,000 the number of asylees whose status may be adjusted to that of lawful permanent resident each year. 8 U.S.C.A. § 1159(b) (West 1999). CIS receives 15,700 to 28,200 applications for adjustment each year and reports that as of March 1, 2004, there were approximately 160,000 applications pending. (Decl. of F. James LoPrest, Ex. A.) CIS has published a schedule setting forth the time periods during which it anticipates it will consider asylees' applications according to when such applications were filed. CIS's schedule provides that applications filed in May 2000 will ordinarily be expected to receive consideration between October 1, 2005 and September 30, 2006. (*Id.;* Defts.' Mem, of Law, at 16–17.)

While the delay of almost five years from May 2000 is not insubstantial, the Court finds, in light of the annual limit on the number of available adjustments and the volume of applications for adjustment in the system, that the delay is not unreasonable.[3] *See, e.g., Chen v. Ashcroft,* 381 F.3d 221, 225 (3d Cir.2004) (noting that, given the cap of 1,000 per fiscal year on conditional grants of asylum based on fear of persecution, there is a waiting list of at least seven years to become eligible for full benefits of asylum); *Checknan,* 313

F.Supp.2d, at 275 (evaluating reasonableness of delay in removal proceedings in light of congressionally mandated limit of 4,000 aliens per fiscal year).

Moreover, Plaintiff's concern that CIS could delay adjudication indefinitely is premature. CIS has provided a framework in which applications will be considered, and Plaintiff's application is not yet ripe for consideration under that schedule. (LoPrest Decl., Ex. A.) Plaintiff has provided no evidence to show that CIS will refuse to adjudicate his application altogether. Nor has Plaintiff provided any compelling rationale for why he should not be made to wait his turn for adjudication. Plaintiff asserts that he has been greatly inconvenienced in travel for business and personal reasons due to his immigration status, (Compl.¶ 19), but his request for adjudication disregards entirely the fact that there are 160,000 applications pending aside from his own. *See Batista,* 2000 WL 204535, at *4 (considering average processing time for applications similar to plaintiff's in determining reasonableness of delay). To the extent Plaintiff complains that there has been delay in processing his travel requests (as required to leave the United States given his refugee status), such claims, even if true, do not warrant action by the Court to mandate early adjudication of his application for adjustment of status. Viewing the evidence regarding the delay in adjudicating Plaintiff's application in the light most favorable to him, no genuine issue of fact exists for trial as to the reasonableness thus far of the challenged delay, and Defendants are entitled to summary judgment.

---

**3.** Plaintiff points to *Ngwanyia v. Ashcroft,* 302 F.Supp.2d 1076 (D.Minn.2004), where the court found that the defendants had unlawfully failed fully to utilize available adjustment quotas, calling the agency's actions "egregious" and a "national embarrassment." Plaintiff provides no evidence to demonstrate that the failures identified in *Ngwanyia* are the cause of the processing delay in his own case.

## CONCLUSION

Defendants' motion to dismiss for lack of subject matter jurisdiction is granted in part and denied in part. Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.[4] The Complaint is hereby dismissed without prejudice to a future claim of unreasonable delay in adjudicating Plaintiff's application for adjustment of status in the event the application remains unresolved after September 30, 2006. The Clerk of Court is directed to close this case.

4. Plaintiff's prayer for injunctive relief requests that the Court enjoin the "Defendants from entering a final determination other than 'approved' regarding his application for Adjustment of Status, pending final judgment in this action." (Compl. ¶ 25.) Because determinations on applications for adjustment of status are expressly committed to the discretion of the Attorney General, the Court lacks subject matter jurisdiction to provide such injunctive relief. *See* 8 U.S.C.A. § 1159(b) (West 2004); *Yilmaz v. McElroy,* No. 00 Civ. 7542(RCC), 2001 WL 1606886, at *3 (S.D.N.Y. Dec.17, 2001).